UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **SYNTHIA NOBLE** and **ERIC BERTRAM**, | ) | |
| | ) | |
| Plaintiffs, | ) | **Case No.** |
| | ) | |
| v. | ) | |
| | ) | **Jury Trial Demanded** |
| **DOVENMUEHLE MORTGAGE, INC.** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiffs Synthia Noble ("Noble") and Eric Bertram ("Bertram") (together the "Plaintiffs"), for their complaint against Dovenmuehle Mortgage, Inc. ("DMI"), state:

## VENUE AND JURISDICTION

1. This Court has jurisdiction under 12 U.S.C. §2605 (RESPA),15 U.S.C. § 1639g (TILA), 15 U.S.C. §1692k (FDCPA), and 28 U.S.C. §1331.

2. Venue and personal jurisdiction in this District are proper under 28 U.S.C. § 1391(b)(2) because DMI conducts business in this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or a substantial part of property that is the subject of the action, is in this District.

## PARTIES

3. Noble is natural person that currently resides in Munster, Lake County, Indiana.

4. Bertram is a natural person that currently resides in Munster, Lake County, Indiana.

1

5. DMI is a foreign corporation formed under the laws of the State of Delaware. DMI has a principal place of business located at 1 Corporate Drive, Suite 350, Lake Zurich, Illinois 60047.

6. DMI is a large mortgage subservicing company which services consumer residential loans on behalf of commercial banks, savings banks, credit unions, insurance companies, mortgage banking companies and state and local housing finance agencies nationwide, in the State of Illinois.

7. At all times relevant, DMI acted as the agent and mortgage loan servicer for BMO Harris Bank ("BMO").

8. As of July 17, 2020, DMI became the servicer for mortgage debt allegedly owed by Plaintiffs to BMO. The debt had been incurred by Plaintiffs as a mortgage on their primary residence.

9. DMI regularly uses the mail and telephone system to collect or attempt to collect debts on behalf of others.

## **STANDING**

10. Plaintiffs have standing because they have suffered an injury-in-fact as the result of Defendant's actions.

11. Specifically, despite their continuous objections, Defendant misrepresented the amount of the alleged debt to Plaintiffs, forcing Plaintiffs to pay an additional $3,000+ of unexplained fees in order to avoid further financial harm, which Plaintiffs' paid under protest, which is sufficient to establish Article III standing.

## BACKGROUND FACTS AND BASIS FOR CLAIMS

12. On or about 11/21/2007, Plaintiffs refinanced the mortgage on their primary residence, 1280 Columbia, Crete, IL, with BMO.

13. During the great recession that followed the 2008 financial crisis, Plaintiffs fell behind on their mortgage payments after suffering a financial hardship, and applied for a loan modification with BMO.

14. On or about 5/2/2010, Plaintiffs and BMO entered into a Modification Agreement on their Mortgage ("Modification"). A true and correct copy of the Modification Agreement is attached as *Exhibit 1.*

15. Under the Modification, the Mortgage terms were altered as follows:

   A. The Mortgage's New Principal Balance would be $225,680.56;
   B. $28,200 of the New Principal Balance would be non-interest bearing and Deferred to the end of the loan;
   C. The remaining $197,480.56 of the New Principal Balance would accrue interest at 2% for the first five years (thereafter the interest would increase by 1% per year, until it was permanently capped at 5% beginning at year 8).
   D. The new Maturity Date would be 4/1/2050.

16. On June 12, 2010, Plaintiffs file a Chapter 7 Bankruptcy in the Northern District of Illinois and received a discharge on September 28, 2010.

17. Plaintiffs did not re-affirm the mortgage debt, but continued making voluntary payments, which BMO, then subsequently DMI, continued accept.

18. BMO sent Plaintiffs monthly mortgage statements honoring the terms of the Modification through at least June 2020.

19. Plaintiffs paid all their monthly mortgage payments from May 2010 through and including July 2020.

20. On information and belief, in July 2020, BMO transferred servicing of Plaintiffs Mortgage to DMI.

21. While Plaintiffs assume that DMI began sending Plaintiffs statements in August 2020, the statements continued to arrive in BMO's name. The statements contained no information informing Plaintiffs that DMI was actually servicing the loan

### Unexplained $3,003.34 Fees

22. Beginning on the August 2020 Statement, Plaintiff's loan balance calculation for the first time included $3,003.34, in what was only described as "Deferred Fees." A true and correct copy of the August 2020 Statement is attached as ***Exhibit 2.***

23. Plaintiffs did not understand where these "Deferred Fees" came from and did not believe that they owed them.

24. Upon discovering the mysterious fees in September 2020, Plaintiffs immediately began calling DMI, who they believed was BMO, in an attempt to find out what these fees were.

25. Plaintiffs made dozens of phone calls to DMI over the following months and wasted countless hours in an attempt to find out what where these fees originate.

26. DMI representatives gave Plaintiffs varying answers on what these fees were, from late fees, to deferred interest, to deferred principal, but they were never able to specify what exactly those fees applied to or how they were calculated.

27. During each call, when DMI representatives couldn't explain where the fees originated, Plaintiffs asked for the fees to be removed. DMI representatives responded that they were unable to remove them and insisted that Plaintiffs owed them, depite not being able to provide more details about them.

28. Prior to the loan being service transferred to DMI and the mysterious fees being added, Plaintiffs were in the process of planning a move to Indiana.

29. Plaintiffs had planned to sell the home so they would not have to worry about two mortgages, or maintaining two properties in two states.

30. Plaintiffs ultimately decided to delay the selling of the home while they worked to have the mysterious fees removed, a process they expected to take a few weeks, but they ultimately wasted about eight months and had to pay the costs of carrying both homes throughout this time.

31. During the phone calls to DMI, Plaintiffs were told to send a written request regarding their questions about the fees.

32. On October 2, 2020, October 9, 2020, and October 15, 2020, Plaintiffs sent DMI letters asking for an explanation of the mysterious fees. A true and correct copy of Plaintiffs Letters are attached as ***Exhibit 3.***

33. Having moved to Indiana at this point, Plaintiffs were unable to keep up with mortgage payments on two homes, and ultimately were forced to default on the BMO loan during the months when they were trying to have the fees removed.

34. On November 2, 2020, DMI sent Plaintiffs a Default Notice ("Default Notice 1"), that included the $3,003.34, this time described as "late charges and other charges have also accrued in the amount of $3,003.34." A true and correct copy of Default Notice 1 is attached as ***Exhibit 4.***

35. Just four days later, on November 6, 2020, DMI sent Plaintiffs another Default Notice ("Default Notice 2"), this time describing the $3,003.34 as "total late charges of $3,003.34." A true and correct copy of Default Notice 2 is attached as ***Exhibit 5***

36. Of note, both Default Notice 1 and Default Notice 2 allege a total of two missed mortgage payments (October 2020 and November 2020, but November was not actually being "missed" yet since Plaintiffs had a grace period through the 15th of the month), so it is hard to believe that the $3,003.34 were late charges.

37. Plaintiffs continue to call DMI several times a week through October and November 2020, wasting hours on the phone with DMI representatives, just to be told the fees could not be removed despite the DMI representatives not being able to explain how the fees originated. Plaintiffs also submit dozens of requests through the DMI/BMO online portal.

38. On November 30, 2020, Plaintiffs sent another written request to DMI asking for an explanation of the fees ("*Pro Se RFI*"). A true and correct copy of the Pro Se RFI is attached as ***Exhibit 6.***

39. From August through December 2020, Plaintiffs had lost approximately 3 to 4 hours a week in calling and writing DMI about these fees, totaling approximately 48 to 64 lost hours. Plaintiff Noble's career was impacted in particular, because, since she is self-employed as a real estate agent, she wound up handling most of these tasks, requiring her to give up valuable time that she would have spent marketing and showing properties.

40. By November 30, 2020, the Plaintiffs were at wits end, they were frustrated, confused, and angry that not only was DMI not removing the fees, they couldn't even provide a basic explanation for where the fees came from. Having lost hope that they would be able to amicably resolve the disputed fees directly with DMI customer service, they hired present counsel – Robson & Lopez LLC – to assist with the dispute.

**November 30, 2020 Requests for Information**

**(RFI 1 and RFI 2)**

41. On November 30, 2020, Plaintiffs, through counsel, sent DMI two formal *Requests for Information* ("RFIs") pursuant to RESPA 12 C.F.R. § 1024.36.

42. The first RFI ("*RFI 1*") requested an accurate payoff statement. A true and correct copy of RFI 1 is attached as **Exhibit 7.**

43. The second RFI ("*RFI 2*") requested (1) a life of loan history, (2) all servicing notes since January 10, 2014, (3) the last two annual escrow analysis, and (4) an up to date reinstatement quote. A true and correct copy of RFI 1 is attached as **Exhibit 8.**

44. Pursuant to USPS tracking number 9214 8901 4298 0457 1643 32, DMI received *RFI 1* on December 7, 2020.

45. DMI did not provide a written response acknowledging receipt of *RFI 1* within five business days as is required by 12 C.F.R. § 1024.36(c).

46. DMI did not provide a written response to *RFI 1* within 30 business days as required by 12 C.F.R. 1024.36(d)(ii)(2)(B). If fact, DMI has not responded to *RFI 1* to date.

47. Pursuant to USPS tracking number 9214 8901 4298 0457 1643 94, DMI received *RFI 2* on December 7, 2020.

48. DMI did not provide an accurate payoff statement in response to *RFI 2* within seven business days as is required by 12 C.F.R. § 1026.36(c)(3). DMI never responded to *RFI 2*.

49. On January 12, 2021, DMI did respond to Plaintiff's *Pro Se RFI* for the first time. DMI's response letter ("Response to Pro Se RFI") stated:

> "Please note, your loan was service transferred from BMO Harris Bank to BMO Harris Bank (by Dovenmuehle Mortgage, Inc. [DMI]) on August 1, 2020. Your account transferred with a deferred interest balance of $3,003.34.

> Our records indicate that you completed a Loan Modification Agreement on May 12, 2010. During this modification you deferred the total interest amount of $3,003.34. For your convenience, enclosed within this correspondence, please find a copy of the signed loan modification paperwork."

A true and correct copy of the Response to Pro Se RFI is attached as ***Exhibit* 9**.

50. The Modification make no mention of a deferred interest amount of $3,003.34.

51. At this point, DMI has referred to the mysterious $3,003.34 as:

    A. Deferred Fees

    B. Late Charges and Other Charges

    C. Total Late Charges

    D. Deferred Interest Balance

### January 25, 2021 Requests for Information
### (RFI 3 and RFI 4)

52. Not having received a response to *RFI 1, RFI 2*, or a relevant response to the *Pro Se RFI*, on January 25, 2021, Plaintiffs, through counsel, sent DMI two subsequent formal *Requests for Information* ("RFIs") pursuant to RESPA 12 C.F.R. § 1024.36

53. The third RFI ("*RFI 3*") again requested an accurate payoff statement. A true and correct copy of *RFI 3* is attached as ***Exhibit 10.***

54. The fourth RFI ("*RFI 4*") again requested (1) a life of loan history, (2) all servicing notes since January 10, 2014, (3) the last two annual escrow analysis, and (4) an up to date reinstatement quote. A true and correct copy of *RFI 4* is attached as ***Exhibit 11.***

55. Though USPS tracking number for *RFI 3* (9214 8901 4298 0458 1932 94) was last updated as "in transit" on January 29, 2020, Plaintiffs believe DMI received it as it was never returned to sender.

56. Though USPS tracking number for *RFI 4* (9214 8901 4298 0458 1932 70) was last updated as "in transit" on January 29, 2020, Plaintiffs believe DMI received it as it was never returned to sender.

57. Additionally, Plaintiffs believe DMI received *RFI 3* and *RFI 4* because DMI sent Plaintiff a letter acknowledging receipt of "your inquiry regarding the above-referenced mortgage loan" on January 28, 2021 ("Confirmation Letter"). However, DMI did no specify in the Confirmation Letter which RFI it was acknowledging. A true and correct copy of the Confirmation Letter is attached as ***Exhibit 12.***

58. Of note, despite all RFIs being sent by Plaintiffs' counsel with a proper executed release, and counsel requesting that all responses to be sent back to counsel, DMI sent the Confirmation Letter directly to Plaintiff Noble.

59. Plaintiffs are certain that DMI actually received *RFI 4* because on February 24, 2021, DMI sent a response to Plaintiffs' counsel ("RFI 4 Response"). A true and correct copy of the RFI 4 Response is attached as ***Exhibit 13.***

60. In its RFI 4 Response, DMI stated that "no error occurred," it provided the two most recent escrow analysis, and also included what it referred to as "a full payment history." However, the payment history only dated back to February 2016, despite the loan having originated in 2007, and having been modified in 2010.

61. DMI did not include the servicing notes that Plaintiffs requested in RFI 4, instead responding "we require a subpoena before providing the internal documentation for any account on file." DMI also stated that the Plaintiffs were entitled to the documents that DMI relied on to reach its conclusion, but required that the Plaintiffs call DMI to obtain said documents. *See* Exhibit 13.

9

### March 17, 2021 Notices of Error

62. On March 17, 2021, Plaintiffs sent DMI three separate Notices of Error ("NOEs") pursuant to 12 C.F.R. § 1024.35 and 12 U.S.C. § 2605(e).

63. Plaintiffs' First NOE ("*NOE 1*") identified DMI's errors in outright failing to acknowledge or respond to RFI 1 and RFI 3, which requested an accurate payoff statement, and asked DMI to correct the error by providing said pay off statement. A true and correct copy of *NOE 1* is attached as **Exhibit 14.**

64. Plaintiffs' Second NOE ("*NOE 2*") identified DMIs errors in outright failing to acknowledge or respond to RFI 2, and in providing an improper and incomplete response to RFI 4. Plaintiffs requested that DMI correct the errors by:

> (1) acknowledging and responding to RFI 2
>
> (2) provide the information and documents that your refused to provide in your response to RFI 4
>
> (3) provide the documentation you relied on to reach your conclusions outlined in your Response to RFI.

A true and correct copy of *NOE 2* is attached as **Exhibit 15.**

65. Plaintiffs' Third NOE ("*NOE 3*") identified DMIs errors in adding the unexplained fees of $3,003.34 to Plaintiffs' loan balance, and requesting that DMI correct the errors by removing the fees, or that it accurately explain where the fees originated and provide documentation to support the fees. A true and correct copy of *NOE 1* is attached as **Exhibit 16.**

66. Pursuant to USPS tracking number 9214 8901 4298 0458 8268 33, DMI received *NOE 1* on March 22, 2021.

67. Pursuant to USPS tracking number 9214 8901 4298 0458 8269 87, DMI received *NOE 2* on March 22, 2021.

68. Pursuant to USPS tracking number 9214 8901 4298 0458 8267 89, DMI received *NOE 3* on March 22, 2021.

69. In violation of 12 CFR 1024.35(d), DMI failed to acknowledge receipt of all three of Plaintiffs' NOEs within five business days, and never acknowledged receipt at all.

70. On April 27, 2021, DMI sent Plaintiffs a letter requesting an additional 15 days to respond to "your inquiry regarding the above-referenced loan" ("Extension Letter"). DMI did not identify which NOE it was referring to in its Extension Letter. A true and correct copy of the Extension Letter is attached as ***Exhibit 17.***

71. Again, despite all NOEs being sent by Plaintiffs' counsel with a proper executed release, and counsel requesting that all responses to be sent back to counsel, DMI sent the Extension Letter directly to Plaintiff Noble.

72. On May 3, 2021, DMI sent Plaintiffs a one page response stating "[w]e have fully investigated the issue you raised regarding the correspondence from Salvador J Lopez from Robson and Lopez, LLC and have determined that no action was required to address this issue because no error occurred" ("NOE Response"). DMI did not identify which NOE it was responding to. A true and correct copy of the NOE Response is attached as ***Exhibit 18.***

73. DMI did not send any other responses to Plaintiffs' RFIs and NOEs.

74. By the end of April 2021, DMI's bad faith failure to comply with RESPA requirements led Plaintiffs to believe that DMI was never going to remove the unexplained fees.

75. What should have been resolved in a couple of days had stretched to over nine months, forcing Plaintiffs to incur additional carrying costs in maintaining the Home, and losing additional equity in the home with the accruing interest, late fees and penalties.

76. Plaintiffs were also dangerously close to having a foreclosure filed against them since they were unable to pay the mortgage since approximately October because they could not afford mortgage payments on two properties. As such, they decided to proceed with the sale of the Home and pay the incorrect amounts demanded by DMI, but under protest.

77. On April 30, 2021, having no other option and not wanting to endure further stress or emotional distress, nor risk further financial harm, Plaintiffs sold the Home and paid the amount demanded by DMI, but paid it under protest, including a letter of protest and identified their protest on the payoff check. A true and correct copy of the Protest Letter and Check are attached as ***Exhibit 19***

78. In order to be able to pay off the loan, Plaintiff's chosen Title Company obtained a payoff letter from DMI ("Payoff Letter"). The Payoff Letter indicated that the payoff amount is good through May 10, 2021, shows the payoff amount as $158,551.88, which includes the $3,003.34 described as "Unpaid Other Fees." A true and correct copy of the Payoff Letter and Check are attached as ***Exhibit 20***

79. DMI accepted Plaintiff's payment under protest and did not respond to the protest, and to date has not refunded the unexplained fees.

80. In addition to actual damages of paying the unexplained fees, paying carrying costs for the property for an additional 8 months, paying for postage and attorney's fees, losing time at work and additional work opportunities, Plaintiffs also faced non-economic damages such as stress and anxiety, which served to exacerbate Plaintiff Noble's clinical depression.

12

81. DMI's actions also caused significant distress to Plaintiffs marriage.

## COUNT I – RESPA (Requests for Information)

82. Plaintiffs incorporate paragraphs 1-81 herein.

83. Plaintiffs requested that DMI provide evidence and documentation of the fees added to Plaintiffs' loan balance.

84. DMI violated 12 U.S.C. § 2605(e) by refusing to provide evidence that the fees and charges added to Plaintiffs balance were genuine or actually incurred.

85. DMI's violation was willful and caused damages to plaintiff equal to the amounts added to the loan balance.

86. DMI's violation caused Plaintiff's actual damages in the carrying costs and additional interest of having to hold off on selling the property for an additional 8 months.

87. DMI's violation caused Plaintiff's actual damages in missed time at work, missed opportunities for more work (Noble), and postage and legal fees incurred.

88. DMI's violation caused Plaintiffs emotional harm as it exacerbated Plaintiff's clinical depression.

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment against Defendant DMI for the following:

    i. Statutory damages;

    ii. Actual damages;

    iii. Attorney's fees, litigation expenses and costs of suit;

    iv. Such other relief as the Court deems proper.

## COUNT II – RESPA (Notices of Error)

89. Plaintiffs incorporate paragraphs 1-88 herein.

90. On March 22, 2021, DMI received Plaintiffs' three Notices of Error requesting that DMI (1) correct its error and remove the fees that it had consistently failed to substantiate (2) correct its errors in failing to respond to Plaintiffs' request for accurate payoff figures, and (3) correct its errors in failing to respond to Plaintiffs' request for documents and information related to Plaintiffs' loan.

91. DMI violated 12 U.S.C. § 2605(k) by refusing to correct its errors and § 2605(e) by failing to fully and properly respond.

92. DMI's violations caused Plaintiffs damages as described above.

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment against Defendant DMI for the following:

  i. Statutory damages;
  ii. Actual damages;
  iii. Attorney's fees, litigation expenses and costs of suit;
  iv. Such other relief as the Court deems proper.

## COUNT III – TILA

93. Plaintiffs incorporate paragraphs 1-92 herein.

94. Defendant violated 15 U.S.C. § 1639g, which requires a mortgage servicer to "send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower."

95. Defendants also violated the implementing regulation, 12 C.F.R. § 1026.36, which provides as follows:

> **In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer . . . must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be**

> **sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time. A creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this paragraph (c)(3) to provide a payoff statement.**

96. On December 7, 2020, and January 28, 2021, DMI received a written requests from Plaintiff requesting Plaintiff's payoff balance. The only payoff statement provided by DMI was in response to the title companies request on April 9, 2021. DMI never responded to Plaintiff's direct written requests.

97. The amount of time that passed is unreasonable.

98. The only response that DMI ever provided to Plaintiff with any real detail required Plaintiff to call DMI for further information and to send a subpoena for additional documentation, both impermissible conditions.

99. 15 U.S.C. § 1640 provides that any creditor who fails to comply with the requirements of 15 U.S.C. § 1639g is liable for actual damages, statutory damages, costs and attorney's fees, and other relief.

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment against Defendant DMI for the following:

    i. Statutory damages;

   ii. Actual damages;

  iii. Attorney's fees, litigation expenses and costs of suit;

  iv. Such other relief as the Court deems proper.

### COUNT IV - Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq ("ICFA")

100. The Plaintiffs incorporate paragraphs 1-99 herein.

101. The Illinois Consumer Fraud and Deceptive Business Practices Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception or fraud, false pretenses, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

102. At all times herein, Plaintiffs were consumers as that term is defined in the Act. 815 ILCS 505/1(e).

103. At all times herein, DMI engaged in trade or commerce as those terms are defined in the Act. 815 ILCS 505/1(f).

104. Plaintiffs suffered proximate harm as a result of DMI's actions.

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment against Defendant DMI for the following:

   i. Statutory damages;
   ii. Actual damages;
   iii. Attorney's fees, litigation expenses and costs of suit;
   iv. Such other relief as the Court deems proper.

### COUNT V – FDCPA – Unauthorized Charges

105. Plaintiff incorporates paragraphs 1-104 herein.

106. Defendant charged and collected at least $3003.34 in unexplained fees from Plaintiffs that it was not entitled to collect.

16

107. Defendant violated 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10), 1692f and 1692f(1) by stating that it had the right to collect these fees and actually collecting them.

108. Section 1692e of the FDCPA provides as follows:

**§ 1692e. False or misleading misrepresentations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

…

**(2) The false representation of—**
**(A) the character, amount, or legal status of any debt; or**
**(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**

…

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.**

…

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

109. Defendant violated § 1692e and e(2)(A) of the FDCPA when it made false, deceptive, or misleading representations in communications to Plaintiff stating it was owed $3,003.34 in Unpaid Other Fees.

110. Defendant violated § 1692e(5) of the FDCPA by threatening to collect fees that it legally was not entitled to collect.

111. Defendant violated § 1692e(10) of the FDCPA by falsely and deceptively threatening to charge late fees in order to induce plaintiff to pay a debt, when in fact such late fees were not legal, and could not be sought.

112. Section 1692f of the FDCPA provides as follows:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

113. Defendants violated 1692f and f(1) by attempting to collect amounts from plaintiff that were not authorized by the agreement creating the debt or permitted by law, namely "late charges."

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment against Defendant DMI for the following:

  i. Statutory damages;
  ii. Actual damages;
  iii. Attorney's fees, litigation expenses and costs of suit;
  iv. Such other relief as the Court deems proper.

## JURY DEMAND

The Plaintiffs demand trial by jury with the maximum number of jurors permitted by law.

Respectfully Submitted.

s/ Salvador J. Lopez
Salvador J. Lopez
ARDC# 6298522
Robson & Lopez, LLC
Attorneys for Plaintiffs
121 S. Western Ave., Unit 1
Chicago, Illinois 60612
312-523-2166
lopez@robsonlopez.com